

## IN THE CIRCUIT COURT OF WASHINGTON COUNTY, ARKANSAS

Case Number: CV13- 2032-4

Plaintiff:     Kortney R. Cline

vs.

Defendant:    Boston Scientific Corporation, and John Does 1 and 2

### SUMMONS

THE STATE OF ARKANSAS TO:   **BOSTON SCIENTIFIC CORPORATION**

Address:     Corporation Service Company (Registered Agent)
             300 Spring Building, Ste. 900
             300 S. Spring Street
             Little Rock, AR 72201

A lawsuit has been filed against you. The relief demanded is stated in the attached complaint. Within 30 days after service of this summons on you (not counting the day you receive it) --- or 60 days if you are incarcerated in any jail, penitentiary, or other correctional facility in Arkansas --- you must file with the clerk of this court a written answer to the complaint or a motion under Rule 12 of the Arkansas Rules of Civil Procedure.

The answer or motion must also be served on the opposing party, or their attorney, whose name and address is:

S. Lance Cox; Cox, Cox & Estes, PLLC; P.O. Box 878, Fayetteville, AR 72702

Additional notices: _____

If you fail to respond within the applicable time period, judgment by default will be entered against you for the relief demanded in the complaint.

Betty Stamps, Circuit Clerk
Washington County Courthouse
280 N. College, Suite 302
Fayetteville, AR 72701

DEPUTY CLERK

DATE:

**EXHIBIT**
A

## IN THE CIRCUIT COURT OF WASHINGTON COUNTY, ARKANSAS

Case Number: <u>CV-2013-2032-4</u>

Plaintiff:      Kortney R. Cline

vs.

Defendant:   Boston Scientific Corporation, and John Does 1 and 2

### CORRECTED SUMMONS

THE STATE OF ARKANSAS TO:   **BOSTON SCIENTIFIC CORPORATION**

Address:       Corporation Service Company (Registered Agent)
                   300 Spring Building, Ste. 900
                   300 S. Spring Street
                   Little Rock, AR 72201

A lawsuit has been filed against you. The relief demanded is stated in the attached complaint. Within 30 days after service of this summons on you (not counting the day you receive it) --- or 60 days if you are incarcerated in any jail, penitentiary, or other correctional facility in Arkansas --- you must file with the clerk of this court a written answer to the complaint or a motion under Rule 12 of the Arkansas Rules of Civil Procedure.

The answer or motion must also be served on the opposing party, or their attorney, whose name and address is:

S. Lance Cox; Cox, Cox & Estes, PLLC; P.O. Box 878, Fayetteville, AR 72702

Additional notices: _____

If you fail to respond within the applicable time period, judgment by default will be entered against you for the relief demanded in the complaint.

Kyle Sylvester, Circuit Clerk
Washington County Courthouse
280 N. College, Suite 302
Fayetteville, AR 72701

_Stroumon Curshiver_
DEPUTY CLERK

DATE: _Jan 21, 2014_

CASE NO. _____

This Summons is for: _____ .

## **PROOF OF SERVICE**

☐    I personally delivered the summons and complaint to the individual at _____

_____ on _____; or

☐    I left the summons and complaint in the proximity of the individual by _____

_____ after he/she refused to receive it when I ordered it to him/her; or

☐    I left the summons and complaint at the individual's dwelling, house or usual place of

abode at _____ with _____

_____, a person of at least 14 years of age who resides there, on _____; or

☐    I delivered the summons and complaint to _____, an agent

authorized by appointment or by law to receive service of summons on behalf of _____

_____ on _____ ; or

☐    I am the plaintiff or an attorney of record for the plaintiff in this lawsuit, and I served the summons and complaint on the defendant by certified mail, return receipt requested, restricted delivery, as shows by the attached signed return receipt.

☐    I am the plaintiff in this lawsuit, and I mailed a copy of the summons and complaint by first class mail to the defendant together with two copies of a notice and acknowledgment and received the attached notice and acknowledgment form within twenty days after the date of mailing.

☐    Other (specify): _____

☐    I was unable to executed service because: _____

_____

My fee is $_____.

**To be completed if service is by a sheriff or deputy sheriff:**

Date:_____        SHERIFF OF _____ COUNTY,

                                    STATE OF _____

                                    BY: _____


                                    _____
                                    [Printed name, title and badge number]

**To be completed if service is by a person other than a sheriff or deputy sheriff:**

Date:_____        BY: _____


                                    _____
                                    [Printed name]

Address: _____

        _____
Phone:   _____

STATE OF _____

COUNTY OF _____

Subscribed and sworn to before me this date: _____


                                    _____
                                    Notary Public

My commission expires: _____

Additional information regarding service or attempted service: _____

_____

_____

## IN THE CIRCUIT COURT OF WASHINGTON COUNTY, ARKANSAS

KORTNEY R. CLINE

v.                          CASE NO.: CV-2013 _2032-4_

BOSTON SCIENTIFIC CORPORATION,
and JOHN DOE NOS. 1 and 2                                    DEFENDANTS

### COMPLAINT

      Comes now the plaintiff in the above-captioned cause, KORTNEY R. CLINE
(hereinafter "Plaintiff"), by and through her undersigned attorneys, and for her Complaint
against Boston Scientific Corporation (hereinafter "BSC"), and John Doe Nos. 1-2,
Defendants herein, states and alleges as follows:

#### Parties and Jurisdiction

      1.    At all times relevant to the causes of action herein-asserted, Plaintiff has
been a resident of Huntsville, Madison County, Arkansas, residing at 7544 Madison
3375 Huntsville, Arkansas 72740.

      2.    BSC is a corporation organized and existing under the laws of Delaware,
with its principal place of business located at 1 Boston Scientific Place, Natick,
Massachusetts, 01760-1537. BSC is and has been at all times relevant herein engaged in
the research, development, manufacture, and sale of transvaginal bladder sling systems,
including the Obtryx Transobturator Mid-Urethral [mesh] Sling (hereinafter the
"Sling"), in the United States .

      3.    This Court has jurisdiction over BSC because, at all times relevant to this

1

Complaint, BSC has conducted regular business in Arkansas, by selling, marketing, promoting, and distributing their products to the medical community therein, one of which is the Sling. BSC's contacts with the State of Arkansas have been significant, continuous, systematic, and direct.

4.     John Doe No. 1 is a separate tortfeasor and defendant herein, whose true identity is presently unknown to the plaintiff and her undersigned attorneys. Defendant John Doe No. 1 is the state or regional sales manager, officer, or director of sales who, at all times relevant herein, has resided and worked for BSC in the State of Arkansas, and who sold, or who authorized, directed, marketed, or promoted the sale, or who otherwise assisted others with the marketing, promotion, and/or sale of, and/or who caused to be delivered, the Sling to the medical community in Arkansas, including the one about which the plaintiff complains herein, that is, the one that was sold and otherwise supplied to Northwest Arkansas Hospitals, LLC, d/b/a Willow Creek Women's Hospital, in Johnson, Washington County, Arkansas (hereinafter "Willow Creek").

5.     Defendant John Doe No. 2 is a separate tortfeasor and defendant herein, whose true identity is presently unknown to the plaintiff and her undersigned attorneys. Defendant John Doe No. 2 is the salesperson, representative, employee, or agent of Defendant BSC who sold, or assisted with the sale or supply of, the Sling to Willow Creek in Johnson, Washington County, Arkansas. At all times relevant herein, Defendant John Doe No. 2 has resided and worked in Arkansas, on behalf of Defendant BSC's behalf.

6.     Defendant John Doe Nos. 1 and 2 negligently participated in, and otherwise negligently assisted Defendant BSC in committing, the negligent acts about

2

which the plaintiff complains herein, and said acts occurred in the State of Arkansas, namely Washington County.

7.    At all times relevant herein, Defendant John Doe Nos. 1 and 2 were acting within the scope of their employment or agency for Defendant BSC.

8.    This action is filed against the separate Defendants John Doe Nos. 1 and 2 in order to preserve Plaintiff's claims against them, and toll the applicable statute of limitation, in accordance with Arkansas law, until such time that their identities, by proper name, can be ascertained in discovery.

9.    In support of this Complaint against John Doe Nos. 1 and 2, an *Attorney's Affidavit as to Unknown Tortfeasors* is attached as Exhibit "A" hereto.

10.    The surgical implantation of the Sling, about which the plaintiff complains herein further below, occurred at Willow Creek in Johnson, Washington County, Arkansas, and BSC's sales employees, directors, managers, and agents marketed, promoted, sold, and otherwise distributed the Sling in the State of Arkansas, namely to Willow Creek in the City of Johnson, County of Washington, Arkansas.

11.    All of the acts and omissions of BSC, as described herein, were committed by BSC's agents, servants, employees, and/or owners who were acting within and during the scope of their respective agencies, services, employments, and/or ownership, and this Court has personal jurisdiction over the parties and subject matters herein; and venue properly lies with this Court.

**Facts**

12.    The Sling, which, on July 22, 2009, was surgically implanted in the plaintiff at Willow Creek, as designed and intended by BSC, was designed,

3

manufactured, marketed, promoted and sold by BSC as a medical or surgical device or product for repairing pelvic organ prolapse (POP), and as a treatment of Genuine Stress Urinary Incontinence, and Urethral Hypermobility; on said date, BSC's mesh Sling was implanted in Plaintiff, to surgically repair her pelvic organ prolapse, and to treat her stress urinary incontinence and urethral hypermobility.

13.     BSC and its employees and agents, including John Does 1 and 2, marketed the Sling to the medical community, including Willow Creek, and to the plaintiff, as a safe, effective, and reliable medical device; implanted by safe and effective, minimally invasive surgical techniques for the treatment of medical conditions such as POP and stress urinary incontinence, and as safer and more effective as compared to the traditional products and procedures, such as the traditional, non-mesh repair.

14.     In fact, however, BSC's Sling contains a monofilament polypropylene mesh and/or collagen. Despite claims that polypropylene is inert, the scientific evidence shows that this material, as implanted in the plaintiff as designed and intended by BSC, is biologically incompatible with human tissue and promotes a negative immune response in a large subset of the population that is implanted with BSC's Sling. This negative response promotes inflammation of the pelvic tissue and can contribute to the formation of severe adverse reactions of the mesh.

15.     Furthermore, BSC's Sling causes hyper-inflammatory responses leading to adverse medical injuries and issues, including chronic pain and fibrotic reaction.

16.     BSC's Sling, slowly, over time, disintegrates after implantation, in the female patient's (Plaintiff's) pelvis.

17.     BSC's Sling causes severe, adverse tissue reactions, and are causally

4

related to infection, as the collagen is a foreign organic material from animals. Cross-linked collagen is harsh upon the female recipient's (Plaintiff's) pelvic tissue, as it hardens in the body, and when implanted in the recipient's (Plaintiff's) body according to the manufacturer's (BSC's) design specifications and instructions, it creates a non-anatomic condition in the pelvis, leading to chronic pain and functional disabilities.

18.     Further, physical and mechanical changes to the mesh sling, occur inside the human (Plaintiff's) body, which result in serious medical complications that do not arise in cases in which the patient undergoes traditional surgery without the use of a mesh sling, like BSC's Sling.

19.     Contrary to BSC's representations regarding the Sling, the Sling and the mesh used to manufacture the Sling are defective and unreasonable dangerous, and have high failure, injury, and complication rates. They fail to perform as intended, require frequent and often debilitating surgical intervention (re-operations), and can cause severe and irreversible injuries, as in the case of this Plaintiff.

20.     These design and manufacturing defects include, but are not limited to, the following:

> (a) The material is not inert and therefore reacts to human tissues and/or other naturally occurring bodily functions in ways that adversely affect patient health;
>
> (b) The mesh harbors infections that adversely affect human tissues and patient health;
>
> (c) The Sling and the mesh migrate from the location of their implantation, adversely affecting tissues and patient health;

(d)   The mesh scratches and rubs tissues, adversely affecting patient

health;

(e)  The Sling and the mesh regularly fail to perform the purpose of their

implantation, such that the patient requires removal of the device and

repeated treatment and surgery;

(f)  The Sling and the mesh injure patients, such that the Sling must be

removed, resulting in additional surgeries;

(g)  The Sling and its mesh material were designed to, and do in fact, meld

with surrounding tissue, requiring multiple, subsequent surgical

procedures just to remove (even if only partially) them, and painful

recoveries;

(h)  The Sling and the mesh become imbedded in human tissue over time,

such that upon removal, damage is caused to organs and tissues,

adversely affecting patient health;

(i)  The Sling's inelasticity, preventing proper mating with the pelvic floor

and vaginal region;

(j)  The Sling and its mesh material migrate from the location of the

implantation, as well as erodes into other pelvic organs, tissue, muscle,

nerves, and bone, adversely affecting tissues and the patient's health;

(k)  The Sling fails to perform as intended, leads to significant injuries to

patients, and requires removal, resulting in repeated treatment and

surgeries, pain, and other debilitating physical and psychological

injury and disability; and

      (l) The product (Sling) is defective in shape, composition, weight, as well

            as physical, chemical, and mechanical properties, and is

            inappropriately engineered for use in the female pelvis.

21.    BSC's Sling creates an unreasonable risk of injury and other adverse

health consequences for patients, including, but not limited to vaginal erosion, infection,

extrusion, perforation, chronic pain, and abscesses.

22.    Prior to the time at which the Sling and mesh were implanted in the

plaintiff, BSC was aware of their defects, including those enumerated above.

23.    However, despite its awareness of the defects and unreasonable risks, BSC

manufactured, marketed, promoted, sold, and distributed the Sling for implantation in

patients like the plaintiff in this case, even though it knew the Sling might seriously

injure and harm those patients.

24.    Alternatively, BSC failed to exercise reasonable care in determining the

risks and potential consequences of implanting the Sling into patients like Plaintiff.

25.    BSC made public statements that the Sling was safe and would not cause

harm to patients, intending that medical professionals and members of the public would

rely upon them and purchase the product for implantation in patients like Plaintiff. When

BSC made such statements, it knew or should have known they were false, misleading,

incomplete, and otherwise inaccurate.

26.    BSC and its agents and representatives, including John Does 1 and 2, also

directly made statements to medical professionals, including Willow Creek and its

medical staff, that implanting the Sling in patients like the plaintiff was safe and would

not cause them harm. When BSC and its agents and representatives made those

statements, they knew or should have known they were false, misleading, incomplete, and otherwise inaccurate.

27.   Further, BSC made statements to the federal Food and Drug Administration ("FDA") during the 510(k) approval process for the Sling that inadequately relied on predicate devices and not clinical testing or other design verifications and process.

28.   BSC also knowingly made material misrepresentations to the FDA concerning the design, manufacture, safety, and efficacy of the Sling.

29.   Even though BSC and its employees and agents, including John Does 1 and 2, knew or should have known that the Sling created an unreasonable risk of harm to female patients in whom it was to be implanted, they continued to market, promote, sell, and distribute the product in the United States, including in Arkansas, to customers like Willow Creek.

30.   At no time prior to the plaintiff's procedure at Willow Creek on July 22, 2009, did the defendants ever provide any full, complete, true, and otherwise adequate warnings or information about of the risks associated with the Sling to the physicians or hospitals to whom and which they have sold the Sling, including Willow Creek in this case, or to the women who might elect the implantation of the Sling, such as the plaintiff in this case.

31.   As a direct and proximate result of the implantation of the Sling on July 22, 2009, Plaintiff has suffered from serious bodily injuries, including but not limited to post-surgical changes along the anterior wall of the vaginal cuff, compatible with mesh displacement and defragmentation; imbedded or melded mesh in the anterior wall of the

vaginal cuff; vaginal wall erosion; and focal thickening of the ventral aspect of the urinary bladder.

32.     Further, as a direct and proximate result of BSC's defective product, and the implantation of the same without adequate warnings to her, Plaintiff has suffered from extreme and continuous mental and physical pain, illness, and suffering, including but not limited to infections, extreme vaginal and pelvic pain; extreme pain with intercourse, to the point of prohibiting the same; extreme pain with urination and the inability to void her bladder without standing up to do so; vaginal bleeding and discharge; fatigue; nausea due to the pain; and depression.

33.     These injuries occurred, and Plaintiff's symptoms manifested themselves, over time. And, in or around February of 2013, Plaintiff learned that BSC's Sling had been recalled, at which time she first became aware that her medical issues and symptoms might be related to, and might be the result of, her surgery in 2009 and, more specifically, the implantation and use of the Sling, and the medical and anatomical changes and symptoms which the Sling and its presence in her body, had thereafter caused thereafter.

34.     Prior to that time, it wasn't until July 13, 2011, that the Food and Drug Administration ("FDA") issued a Safety Communication, wherein it stated that "serious complications associated with surgical mesh for transvaginal repair of POP are **not rare**" (emphasis in the original). At that time, and for the first time, the FDA publicly addressed the defects in the Sling, and the substantial and serious risks of complex medical issues and injury associated with one's use and implantation of the same.

**Count I: Negligence**

9

35.    Plaintiff incorporates and re-alleges paragraphs 1-31 above, by reference, as if set forth word for word herein-immediately below.

36.    Defendants had a duty to exercise reasonable and ordinary care in the design, manufacture, labeling, instructions for use, warnings, sale, marketing, promotion, and distribution of the Sling.

37.    Defendants breached their duty of care to Plaintiff in the design, manufacture, labeling, instructions for use, warnings, sale, marketing, promotion, and distribution of the Sling.

38.    As a proximate result of the defendants' design, manufacture, labeling, marketing, promotion, sale, and distribution of the Sling, Plaintiff has sustained severe and permanent injuries, including extreme pain, physical and mental suffering and anguish, loss of care, comfort, and consortium, and substantial economic damages. As a result of her inability to engage in sexual intercourse due to the extreme pain that made it prohibitive, Plaintiff's husband divorced her and, consequently, she is now a single mom who must care for her children, without their father's assistance and companionship.

## Count II: Strict Liability – Manufacturing Defects

39.    Plaintiff incorporates and re-alleges paragraphs 1-35 above, by reference, as if set forth word for word herein-immediately below.

40.    Defendants' Sling in Plaintiff's case was defectively and improperly manufactured, rendering it unreasonably (extremely) dangerous and hazardous to Plaintiff, and it is defective as a matter of law with respect to its manufacture.

41.    Defendants' Sling is inherently dangerous and defective, unfit and unsafe

for its intended and reasonably foreseeable uses, and it does not meet or perform to the expectations of patients like the plaintiff, and their health care providers.

42.    Defendants' Sling creates risks to the health and safety of the plaintiff and other patients like her, risks that are far more significant and devastating than the risks posed by other products and procedures that are available to treat her corresponding medical conditions, and which far outweigh the utility of the Sling.

43.    As a direct and proximate result of the Sling's defects, Plaintiff was caused and in the future will continue to be caused to suffer severe and permanent personal injuries, pain and suffering, emotional distress, economic loss, including but not limited to past and future medical expenses, in amounts that will be proven at trial.

44.    Defendants are strictly liable to Plaintiff for manufacturing and selling an unreasonably dangerous and defective product.

### Count III: Strict Liability – Design Defect

45.    Plaintiff incorporates and re-alleges paragraphs 1-41 above, by reference, as if set forth word for word herein-immediately below.

46.    Defendants' Sling was defectively and improperly designed, rendering it unreasonably dangerous and hazardous to Plaintiff and other patients.

47.    Defendants' Sling is inherently dangerous and defective, unfit and unsafe for its intended and reasonably foreseeable uses, and it does not meet or perform to the expectations of patients like Plaintiff, and their health care providers.

48.    Defendants' Sling creates risks to the health and safety of the plaintiff and other patients that are far more significant and devastating than the risks posed by other products and procedures that are available to treat the corresponding medical conditions,

and which far outweigh the utility of the Sling.

49.     As a direct and proximate result of the Sling's defects, Plaintiff was caused and in the future will continue to be caused to suffer severe and permanent personal injuries, pain and suffering, emotional distress, economic loss, including but not limited to past and future medical expenses, in amounts that will be proven at trial.

50.     Defendants are strictly liable for their defective design and sale of such a defective and inherently dangerous product.

### Count IV: Strict Liability – Failure to Warn

51.     Plaintiff incorporates and re-alleges paragraphs 1-47 above, by reference, as if set forth word for word herein-immediately below.

52.     Defendants' Sling was unreasonably dangerous, and not safe for its intended use and purpose, and it was defective as a matter of law with respect to its lack of appropriate and necessary warnings.

53.     The reasonably foreseeable use of the Sling involved significant dangers not obvious to the ordinary users of the product.

54.     Defendants failed to warn properly and adequately the plaintiff and her health care providers as to the relative and competing risks of and benefits from the Sling, the proper patient-candidates, and the safest and most effective methods of implantation and use of the Sling.

55.     Further, Defendants failed to warn properly and adequately the plaintiff and her health care providers as to the relative and competing risks of and benefits of the product, given Plaintiff's condition and need for such information.

56.     Some of the risks and matters about which the Defendants failed to

12

adequately warn the plaintiff, or Plaintiff's health care providers in this case, include but are not limited to the following:

(a) The Sling's propensity to contract, retract, and/or shrink inside the body;

(b) The Sling's propensities for degradation, fragmentation, and/or creep;

(c) The Sling's rate and manner of mesh erosion or extrusion;

(d) The Sling's propensity to cause, and the risk of, chronic inflammation, infections, permanent vaginal and/or pelvic scarring, and vaginal, pelvic, and other pain;

(e) The need for corrective or revision surgery(ies) to adjust or remove the contracts, retracted, shrunk, eroded, fragmented, melded, or other failed and defective parts of the Sling;

(f) Extreme pain with urination;

(g) Extreme and prohibitive pain in connection with sexual intercourse;

(h) Injury to the vaginal wall, bladder, and other parts of the body, including tissues, nerves, and muscles;

(i) That treatment of pelvic organ prolapse, urethral hypermobility, and stress urinary incontinence with the Sling is no more effective than feasible, less dangerous alternatives;

(j) That treatment of pelvic organ prolapse, urethral hypermobility, and stress urinary incontinence with the Sling exposes patients like Plaintiff to a greater risk than feasible available alternatives;

(k) That treatment of said issues makes future surgical repair more

13

difficult than feasible available alternatives;

(l) That use of the Sling puts the patient like Plaintiff at greater risk of requiring additional surgery than feasible alternatives;

(m) That removal of the Sling and mesh, due to complications, may involve multiple surgeries and may significantly impair the patient's quality of life;

(n) That complete removal of the Sling and mesh may not be possible and may not result in complete resolution of the complications, including pain; and

(o) The other risks enumerated in paragraph 17 above.

57.     Further, Defendants misrepresented the safety, risks, and benefits of the Sling, understating the risks and exaggerating the benefits in order to advance their own financial interests, with wanton and willful disregard for the plaintiff's rights, health, and best interests, and in disregard for other patients like her.

58.     As a direct and proximate result of Defendants' failure to warn the plaintiff of the risks described herein-above, Plaintiff was caused and in the future will continue to be caused to suffer severe and permanent personal injuries, pain and suffering, emotional distress, economic loss, including but not limited to past and future medical expenses, in amounts that will be proven at trial.

59.     Defendants are strictly liable for their failure to warn, design, manufacture, and sale of the inherently and dangerously defective product (Sling).

## Count V: Breach of Express Warranty

60.     Plaintiff incorporates and re-alleges paragraphs 1-55 above, by reference,

14

as if set forth word for word herein-immediately below.

61.     Defendants intended that the Sling be used in the manner that Plaintiff and her health care providers in this case, in fact, used it; and Defendants warranted the product was safe and fit for use by consumers like Willow Creek and Plaintiff, that it was of merchantable quality, that its side effects were minimal and comparable to other mesh products, and that it was adequately tested and fit and safe for its intended use.

62.     At the time Defendants made these express warranties, they knew or should have known that the Sling did not conform to the express warranties because the product was unreasonably dangerous and defective and had numerous serious side effects and potential injurious effects, most of which Defendants did not warn Plaintiff or her health care providers about.

63.     Plaintiff and her health care providers in this case chose the Sling based on Defendants' warranties and representations regarding the purported safety and fitness thereof.

64.     Plaintiff, individually, and by and through her physicians and Willow Creek, reasonably relied upon the defendants' express warranties that the Sling was safe, merchantable, and fit for its intended use.

65.     Defendants breached these express warranties because the Sling that was implanted in Plaintiff was unreasonably dangerous and defective, contrary to Defendants' representations and warranties.

66.     As a proximate result of the defendants' acts and omissions, Plaintiff was caused and in the future will continue to be caused to suffer severe and permanent personal injuries, pain and suffering, emotional distress, economic loss, including but not

15

limited to past and future medical expenses, in amounts that will be proven at trial.

## Count VI: Breach of Implied Warranty

67.     Plaintiff incorporates and re-alleges paragraphs 1-62 above, by reference, as if set forth word for word herein-immediately below.

68.     Defendants designed, manufactured, marketed, promoted, sold, and distributed the Sling.

69.     Defendants intended that the Sling be used for the purpose and in the manner that Plaintiff and Plaintiff's implanting physician, in fact, used it in this case; and Defendants impliedly warranted that the Sling was of a merchantable quality, safe and fit for such use, and adequately tested.

70.     Plaintiff, Willow Creek, and Plaintiff's implanting physician were foreseeable users of the Sling.

71.     Plaintiff, individually and/or by and through her implanting physician, relied upon the defendants' implied warranty of merchantability and fitness for a particular purpose when Plaintiff consented to have the Sling implanted in her body.

72.     Defendants breached their implied warranties because the Sling that was implanted in Plaintiff's body was unreasonably dangerous and defective, contrary to Defendants' representations and warranties.

73.     As a promise result of the defendants' acts and omissions, Plaintiff has been caused and in the future will continue to be caused to suffer severe and permanent personal injuries, pain and suffering, emotional distress, economic loss, including but not limited to past and future medical expenses, in amounts that will be proven at trial.

## Count VII: Punitive Damages

16

74.    Plaintiff incorporates and re-alleges paragraphs 1-69 above, by reference, as if set forth word for word herein-immediately below.

75.    Defendants knew or should have known that their Sling was dangerous and defective, and that it presented an unreasonable risk of harm and injury, including permanent injuries and pain.

76.    Defendants' conduct in designing, manufacturing, labeling, packing, marketing, promoting, selling, and distributing such a dangerously defective product that Defendants knew presented an unreasonable risk of harm and injury demonstrates a reckless indifference to and conscious disregard for the foreseeable users of the product, which justifies a punitive damage award of no less than $5,000,000.00, in order to punish and deter the same or any similar conduct by Defendants and others in the future.

77.    Plaintiff reserves her right to amend this complaint, upon further investigation and discovery in the matter.

78.    **PLAINTIFF RESPECTFULLY DEMANDS A JURY TRIAL ON ALL ISSUES AND CLAIMS.**

WHEREFORE, the Plaintiff, Kortney R. Cline, prays for the entry of a judgment against the defendants herein, Boston Scientific Corporation, and John Does 1 and 2, in a total amount exceeding the amount needed for diversity jurisdiction in federal court, plus attorney's fees, costs, and interest at the highest rate permitted by law, and for any other relief to which she might find herself entitled, whether specifically prayed for herein or not.

A set of requests for admission of fact, and a first set of interrogatories and requests for production of documents, are hereby propounded herewith upon Defendant

Boston Scientific, with the service of summons.

Respectfully submitted,

KORTNEY R. CLINE, Plaintiff,

By:

G. Chadd Mason BIN 93035
Mason Law Firm
P.O. Box 1265
224 N. Block
Fayetteville, AR 72702
(479) 587-9300

And

S. Lance Cox  BIN 98127
COX, COX & ESTES, PLLC
P. O. Box 878
Fayetteville, AR 72702
(479) 251-7900

On Behalf of all Counsel Above

Her Attorneys

18