IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

KORTNEY R. CLINE                                                                                      PLAINTIFF

v.                                          CASE NO. 5:14-cv-05090-TLB

BOSTON SCIENTIFIC CORPORATION,
and JOHN DOE NOS. 1 and 2                                                                  DEFENDANT

**PLAINTIFF KORTNEY R. CLINE'S BRIEF IN SUPPORT OF
HER RESPONSE IN OPPOSITION TO DEFENDANT BOSTON
SCIENTIFIC CORPORATION'S MOTION FOR PARTIAL
DISMISSAL OF PLAINTIFF'S FIRST AMENDED COMPLAINT**

Comes now the Plaintiff in the above-captioned case, Kortney R. Cline, by and through her undersigned attorneys, and submits the following brief in opposition to Defendant Boston Scientific Corporation's (hereinafter "Defendant") motion to dismiss Plaintiff's First Amended Complaint.

## I.   Introduction

This Court should deny Defendant's Rule 12(b)(6) motion to dismiss Plaintiff's First Amended Complaint, because Plaintiff has pled more than sufficient facts to state a plausible claim for relief.  Once again, Defendant's primary assertion is that Plaintiff failed to meet the pleading standard as established in *Bell Atlantic Twombly*, 550 U.S. 544 (2007), as well as *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

As Plaintiff has already argued, however, that is simply not the case.  As Defendant once again argues, to survive a motion to dismiss for failure to state a claim under *Twombly*, "[f]actual allegations must be enough to raise a right to relief above the speculative level," and must set forth "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555, 570.

1

Indeed, a complaint must contain "more than labels or conclusions" or "a formulaic recitation of the elements of a cause of action" to meet such a standard. *Id.* at 555. As a result, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

However, as Plaintiff has previously established, a complaint can survive a motion to dismiss for failure to state a claim ***even if*** it is "***improbable***" that a plaintiff would be able to successfully prove those facts (emphasis added). *Twombly*, 550 U.S. at 556. Indeed, such a complaint would survive even if the possibility of recovery is "remote and unlikely." *Id.* In ruling on a motion to dismiss, courts must accept factual allegations as true and construe them in the light ***most favorable*** to the ***plaintiff***. *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 508 (2002). Notice pleading, as a general rule, is all that is required for a valid complaint. Specific facts are not in themselves necessary; in fact, complaints (such as Plaintiff's First Amended Complaint) need only give a defendant (such as Defendant) fair notice of what the claim is and the grounds upon which it rests. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007).

Plaintiff's First Amended Complaint easily meets the standard established by both *Twombly* and *Iqbal*. It alleges, in more than sufficient detail, enough information to give Defendant fair notice as to the nature of the Plaintiff's claims, as well as their factual underpinnings. Among these are that one of Defendant's devices was surgically implanted into her body at a time when Defendant did in fact know, or at least, should have known, that the device might cause an extraordinarily high rate of complications.

Indeed, Plaintiff's First Amended Complaint alleges that, even before Plaintiff's injuries manifested themselves, Defendant knew about the potential safety hazards of the vaginal sling in question, due to their awareness of the sling's defects. As Plaintiff's First Amended Complaint,

as well as her original Complaint, alleges, Defendant failed to exercise reasonable care to determine, through testing and monitoring of their slings' performances before releasing the devices to nationwide marketing, the potential risks and consequences of implanting their vaginal slings into patients like Plaintiff.  The First Amended Complaint alleges, once again, that Defendant knowingly sent, without adequate warning, a dangerous device into the health care marketplace.

Thus, the First Amended Complaint asserts that all of these failings caused serious and permanent injuries to Plaintiff.  Essentially, Defendant contends that Plaintiff must allege in greater, near-exact detail what went wrong with the sling, and why it did so, after it was placed in her body in order to survive a *Twombly/Iqbal* challenge.  However, that sort of exact detail is not necessary at this stage.  The First Amended Complaint alleged post-surgical changes along the anterior wall of Plaintiff's vaginal cuff, as well as imbedded or molded mesh in the anterior wall of the vaginal cuff, vaginal wall erosion, and focal thickening of the ventral aspect of the urinary bladder, all of which is consistent with vaginal sling displacement and defragmentation.  Indeed, the First Amended Complaint provides detailed descriptions of Plaintiff's injuries, including injuries to her pelvic floor, vagina, and organs, as well as the fact that she now suffers chronic pain and fibrotic reactions.

Plaintiff's contention is that this vaginal sling, which is present in the same area as her pain, caused her severe abdominal symptoms.  The Plaintiff does not need to further state exactly how or why the specific sling placed in her body caused her internal injuries to state a claim plausible on its face.  As the Seventh Circuit has previously stated in *Bausch v. Stryker Corp.*, 630 F.3d 546, 558 (7th Cir. 2010), "district courts must keep in mind that much of the product-specific information about manufacturing needed to investigate such a claim fully is kept confidential by

federal law. Formal discovery is necessary before a plaintiff can be expected to provide a detailed statement of the specific bases for her claims."

Defendant, however, demands that a plaintiff must give more detail than Plaintiff did here about what went wrong and how it did so in order to defeat a motion to dismiss. If this Court followed such a harsh standard, medical device manufacturers such as Defendant would effectively be granted *de facto* immunity. Using the standard of *Twombly/Iqbal* in such a pitiless manner would bar many plaintiffs, with potentially successful claims, from any fair chance of recovery.

## II.   Strict Liability – Manufacturing Defect

Defendant contends that Plaintiff's strict liability claim, regarding the manufacturing defects of their sling, was insufficiently pled. However, that is simply not the case. In Arkansas, a supplier of a product is "***strictly liable*** for an injury caused by the product if (1) the product is in a defective condition that rendered it unreasonably dangerous, and (2) the defective condition was a proximate cause of the injury" (emphasis added). *Boerner v. Brown & Williamson Tobacco Co.*, 260 F.3d 837, 842 (8th Cir. 2001) (discussing ARK. CODE ANN. §4-86-102).

Defendant states that the First Amended Complaint's manufacturing defect strict liability claim is not sufficiently pled simply because Plaintiff did not explicitly state how the device deviated from the intended result, or because Plaintiff did not allege how specific design defects rendered her specific device ineffective. Once again, however, such specificity is not explicitly required at this time. All that is needed, as previously asserted, are statements alleging (1) the sling in question is in a defective condition that made it unreasonably dangerous, and (2) that the defective condition was a proximate cause of the injuries. *Id.*

Nevertheless, the plaintiff delineated, with incredible specificity, *numerous* defects in regard to both the design and manufacture of the defendant's product down, vis-à-vis its incompatibility with human tissue, its composition and structure, its propensity to migrate and disintegrate, and meld with human tissue and organs, in the human body, etc.

In Defendant's Memorandum in Support of Its Motion For Partial Dismissal of Plaintiff's First Amended Complaint, Defendant claims (as it had previously attempted to argue in its original motion to dismiss Plaintiff's original Complaint) that, in order for Plaintiff's manufacturing defect strict liability claim to survive a motion to dismiss, Plaintiff had to somehow have information or knowledge of Defendant's own manufacturing specifications, and plead that it did not fit those exact specifications.

However, that is simply not the law in Arkansas.  Once again, in Arkansas a supplier of a product (such as Defendant) is "***strictly liable*** for an injury caused by the product if (1) the product is in a defective condition that rendered it unreasonably dangerous, and (2) the defective condition was a proximate cause of the injury" (emphasis added). *Boerner v. Brown & Williamson Tobacco Co.*, 260 F.3d 837, 842 (8th Cir. 2001) (discussing ARK. CODE ANN. §4-86-102). Nevertheless, the plaintiff delineated in her amended complaint, with incredible specificity, *numerous* defects in regard to both the design and manufacture of the defendant's product down, vis-à-vis its incompatibility with human tissue, its composition and structure, its propensity to migrate and disintegrate, and meld with human tissue and organs, in the human body, etc.

Defendant cites no persuasive, much less controlling authority for the premise or proposition that there is the additional requirement of pleading that an unreasonably dangerous product, in its defective condition, failed to meet Defendant's own design specifications. And, in fact, it would be impossible for Plaintiff to allege and thereby allude to evidence that refutes

5

Defendant's own inevitable assertions that the sling did, in fact, meet every single specification possible.

As previously stated, all that is required, in Arkansas, for Plaintiff to sustain a claim of strict liability is for her to prove that she sustained damages; that Defendant was engaged in business of manufacturing or assembling or selling or leasing or distributing a product; that the product was supplied by the manufacturer in a defective condition that rendered it unreasonably dangerous; and that the defective condition was a proximate cause of plaintiff's damages. *Stalter v. Coca- Cola Bottling Co. of Arkansas*, 282 Ark. 443, 669 S.W.2d 460 (Ark. 1984).

Plaintiff has stated sufficient causes of action for defective design and manufacture. She pled, in more than conclusory terms, and has shown, through her allegations, that the device, as manufactured, incorporated one or more components that, either singly or in combination, led to Plaintiff's injuries. This more than suffices, in light of the detailed factual assertions that Plaintiff set forth in her complaint in regard to the specific defects of the subject product (sling) at the time of its sale and distribution in commerce.

### III.   Breach of Warranty

In the state of Arkansas, a sufficient claim for breach of express warranty in Arkansas must simply state that a Defendant made "an affirmation of fact or promise to [a] buyer which relates to the goods and becomes part of the basis of the bargain," or that a defendant made a "description of the goods," which subsequently became "part of the basis of the bargain," as this creates an "express warranty" that the goods will conform either to the "affirmation or promise" or to the "description." ARK. CODE ANN. § 4-2-313(1).

Plaintiffs could also allege that a defendant created an express warranty if a defendant provides a "sample or model" which becomes part of the basis of the bargain, due to the buyer's

6

belief that the goods shall conform to the sample or model. Id. In her First Amended Complaint, Plaintiff plainly met this standard, as she explicitly alleged, in paragraphs 95-99, that Defendant did, in fact, make an affirmation of fact or promise to a buyer (in this case, Willow Creek and Plaintiff) that their vaginal sling in question would serve its purpose for which it was designed, and that both Willow Creek (Plaintiff's health care providers) and Plaintiff reasonably relied upon this affirmation that the sling was fit for its intended use. (First Amend. Compl. at ¶¶ 95-99).

Indeed, Plaintiff and Willow Creek would not have reasonably relied upon such an affirmation if Defendant's express warranty that the sling would be fit for its intended purpose did not form the basis of the bargain between Defendant and Willow Creek, as well as Willow Creek and Plaintiff. Plaintiff would not have chosen to proceed with the surgery without Defendant's affirmations to Willow Creek that their sling was fit for its intended purpose, and that there were no inherent defects with the sling.

Both Willow Creek (as the initial purchaser of the sling) and Plaintiff (who relied upon Defendant's affirmations of fact to Willow Creek) made these affirmations of fact the basis of their bargain with Defendant, as required under Arkansas law. *Ciba-Geigy Corp. v. Alter*, 309 Ark. 426, 447, 834 S.W.2d 136, 147 (Ark. 1992). Defendant, in marketing their sling to consumers like Willow Creek and Plaintiff, made express affirmations of fact that the product was safe and fit for use by those consumers, and that it was of merchantable quality. (Compl. at ¶ 95).

Plaintiff also both described how Defendant breached this warranty (i.e., by making these affirmations of fact even after they were aware of the inherent design and manufacturing defects regarding the Obtryx Transobturator Mid-Urethral Sling), and how the alleged breach caused her injuries (i.e., that the sling's tendency towards degradation and erosion led to post-surgical changes along the anterior wall of Plaintiff's vaginal cuff, vaginal wall erosion, and focal thickening of the

7

ventral aspect of Plaintiff's urinary bladder).

Defendant also contends that Plaintiff's breach of implied warranty claim is not sufficiently pled. However, to recover for breach of an implied warranty of merchantability, the Plaintiff must prove: (1) that she sustained damages; (2) that the sling was not merchantable (i.e., not fit for the ordinary purpose for which such slings are used); (3) that the unmerchantable condition was a proximate cause of Plaintiff's damages; and (4) that the Plaintiff was a person whom Defendant might reasonably expect to use or be affected by the goods. *Jackson v. Swift- Eckrich*, 830 F.Supp. 486, 490-91 (W.D.Ark. 1993).

Plaintiff has, in fact, sufficiently pled all of these necessary elements for a successful breach of implied warranty claim: (1) Plaintiff established that she has suffered damages due to Defendant's sling (First Amend. Compl. at ¶¶ 19-24; 31-32); (2) Plaintiff alleged, in sufficient detail, that the sling was not merchantable (First Amend. Compl. at ¶¶ 14-16; 18; 22-31; 107); (3) Plaintiff expressly stated that the unmerchantability of Defendant's sling was the proximate cause of Plaintiff's severe injuries (First Amend. Compl. at ¶¶ 53-54; 69); and (4) Plaintiff explicitly stated that she was, in fact, a "foreseeable user" of the sling, as someone that Defendant could reasonably expect to use or be affected by their defective Obtryx vaginal sling. (First Amend. Compl. at ¶ 105).

Plaintiff has met all the necessary requirements to plead a valid breach of express and implied warranty claims. Defendant's contention, yet again, is that Plaintiff must provide explicit, in-depth factual details (some of which Plaintiff cannot learn until the end of discovery) to survive its motion to dismiss these claims. As previously asserted, however, notice pleading is all that is required for a valid complaint, and specific facts are not in themselves necessary, as a complaint need only give a defendant fair notice of what the claim is and the grounds upon which it rests.

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

## IV. Conclusion

Plaintiff's First Amended Complaint is more than sufficiently detailed in regard to both the facts and Plaintiff's manufacturing defect strict liability and breach of express and implied warranties claims. Indeed, all of these claims are more than plausible on their face. For all of the reasons set forth, Plaintiff respectfully requests that this Court deny Defendant's motion to the partial dismissal of Plaintiff's First Amended Complaint.

Respectfully submitted,

Plaintiff,

KORTNEY R. CLINE

By: /s/ *S. Lance Cox*

    S. Lance Cox BIN 98127
    COX, COX, & ESTES, PLLC
    P.O. Box 878
    Fayetteville, AR 72702
    (479) 251-7900

And

By: /s/ *G. Chadd Mason*

    G. Chadd Mason BIN 93035
    Mason Law Firm
    P.O. Box 1265
    224 N. Block
    Fayetteville, AR 72702
    (479) 587-9300

Her Attorneys

## CERTIFICATE OF SERVICE

I, S. Lance Cox, state that on this 2nd day of May, 2014, I have electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which will send notifications of

such filing to all attorneys of record, and that a true and correct copy of the foregoing *Plaintiff's Brief in Support of Her Response to Defendant Boston Scientific Corporation's Motion for Partial Dismissal of Plaintiff's First Amended Complaint* was mailed, postage prepaid, to the following counsel of record.

Kevin A. Crass
Friday, Eldredge, & Clark, LLP
2000 Regions Center
400 West Capitol Avenue
Little Rock, AR 72201-3493

Roger Christopher Lawson
Friday, Eldredge, & Clark, LLP
3425 N. Futrall
Suite 103
Fayetteville, AR 72703

/s/ S. Lance Cox
S. Lance Cox