IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

KORTNEY R. CLINE                                                                                    PLAINTIFF

V.                                       CASE NO. 5:14-CV-5090

BOSTON SCIENTIFIC CORPORATION                                                     DEFENDANT

OPINION AND ORDER

Now before the Court are Plaintiff Kortney R. Cline's Motion to Permit Live Trial Testimony in Contemporaneous Transmission (Doc. 92), Defendant Boston Scientific Corporation's ("BSC") Response in Opposition (Doc. 93), and Ms. Cline's Reply (Doc. 95). For the reasons explained, the Motion is **GRANTED IN PART AND DENIED IN PART**.

Ms. Cline's case was grouped into one of seven multi-district litigations ("MDLs") assigned to the same presiding judge in the Southern District of West Virginia ("the MDL court"). The MDLs involved different, though related, transvaginal mesh products and their various manufacturers. Ms. Cline alleges that she was implanted with a mesh product made by BSC called the Obtryx Transobturator Mid-Urethral Sling System ("Obtryx") and that the product was defective and caused her to sustain multiple injuries. In consolidating the MDLs for discovery purposes, the Judicial Panel on Multidistrict Litigation determined that "[t]he actions in each MDL share[d] factual issues arising from allegations of defects in pelvic surgical mesh products . . . [and that] [c]entralization therefore [would] eliminate duplicative discovery . . . ." *In re Bos. Sci. Corp., Pelvic Repair Sys. Prods. Liab.*, 2019 WL 385420, at *2 (S.D.W. Va. Jan. 30, 2019) (quoting *In re Am.*

1

*Med. Sys., Inc., Pelvic Repair Sys. Prods. Liab. Litig.*, 844 F. Supp. 2d 1359, 1360 (J.P.M.L. 2012)).

The herculean task of coordinating discovery in "one of the largest multidistrict litigation proceedings in this country's history" involving "104,000 individual plaintiffs . . . . implanted with different products manufactured by multiple defendant manufacturers across MDL lines" was unprecedented. *Id.* at *1. The MDL court appointed a committee of sixty-one attorneys to work on behalf of all plaintiffs and "coordinate across MDL lines . . . . to develop the litigation strategy and theories of liability, depose experts, and absorb the massive litigation costs." *Id.* at *2. Undoubtedly, this coordinated approach "saved money and helped to prevent cross-MDL conflicts and duplicative work," but it meant that discovery lasted for many years and broadly covered numerous products and legal theories. *Id.*

During the course of the MDL, the plaintiffs' committee deposed dozens of BSC employees, often multiple times each. Three of those employees are now the subject of Ms. Cline's Motion. They are James Goddard, the Research and Development Manager for BSC's Urology and Women's Health Division and member of the research and design team that developed the Obtryx; Janice Connor, a former clinical affairs specialist and former Director of Clinical Operations for the Urology and Women's Health Division for BSC; and Doreen Rao, a principal engineer for BSC's Urology and Women's Health division who oversaw the design of the Obtryx. Mr. Goddard was deposed in the MDL on seven different occasions from 2013 to 2017, and Ms. Connor was deposed six different times during the same period. *See* Docs. 93-2 & 93-3. Ms. Rao on the other hand was deposed only once, but that deposition took place in 2013, nearly eight years ago. (Doc.

93-4). Ms. Cline maintains that all three witnesses are important to her case-in-chief, but BSC refuses to produce them live for trial. The witnesses live in Massachusetts and are therefore outside the subpoena power of this Court. *See* Fed. R. Civ. P. 45(c) (limiting geographic area for compliance with subpoena to within 100 miles of the witness's residence or place of employment).

The thrust of Ms. Cline's Motion is that consolidating the witnesses' multiple, aged depositions into three trial depositions will prove extremely burdensome to counsel and will likely confuse the jury and hamper Ms. Cline's presentation of key testimony. She suggests instead that the Court permit her to call these witnesses at trial through a contemporaneous, live transmission, or, in the alternative, to take a new trial deposition of each witness for the purpose of presenting the testimony in a coherent format, targeted to the claims pertinent to her case. BSC opposes both requests.

The Court begins its discussion by considering Ms. Cline's request to compel live, remote testimony of the witnesses through contemporaneous transmission. Federal Rule of Civil Procedure 43(a) states:

> At trial, the witnesses' testimony must be taken in open court unless a federal statute, the Federal Rules of Evidence, these rules, or other rules adopted by the Supreme Court provide otherwise.

As previously explained, Rule 45(c) places these witnesses outside the subpoena power of the Court. Rule 43(a) then goes on to state:

> For good cause in compelling circumstances and with appropriate safeguards, the court may permit testimony in open court by contemporaneous transmission from a different location.

The Advisory Committee's note to Rule 43(a) explains that "[t]he most persuasive showings of good cause and compelling circumstances are likely to arise when a witness

3

is unable to attend trial for unexpected reasons, such as accident or illness, but remains able to testify from a different place." Fed. R. Civ. P. 43 advisory committee's note. Further, the Advisory Committee emphasizes that "[o]ther possible justifications for remote transmission . . . must be approached cautiously" and suggests that "depositions, including video depositions, provide a superior means of securing the testimony of a witness who is beyond the reach of a trial subpoena, or of resolving difficulties in scheduling a trial that can be attended by all witnesses." *Id.*

In the Court's view, the Advisory Committee's guidance must be interpreted to mean that neither "good cause" nor "compelling circumstances" will warrant ordering a witness to give testimony at trial by contemporaneous transmission if that same witness previously sat for a videotaped deposition. "A party who could reasonably foresee the circumstances offered to justify transmission of testimony will have special difficulty in showing good cause and the compelling nature of the circumstances." *Id.* Here, the parties reasonably foresaw the unavailability of all three of these BSC witnesses and captured their testimony on videotape accordingly. For these reasons, the Court **DENIES** Ms. Cline's request to compel the witnesses to testify live through contemporaneous transmission.

With respect to Ms. Cline's alternate request to take new, videotaped trial depositions of the witnesses, the Court is persuaded that this relief should be **GRANTED**, to the extent BSC refuses to present this testimony live. The Federal Rules do not distinguish between discovery depositions and depositions for use at trial, but as a practical matter, there are certain circumstances where it becomes necessary to take so-called "trial depositions" of previously deposed witnesses. Most often, these trial

4

depositions are conducted by agreement, but in rare circumstances, a court may order a party to produce a witness for a trial deposition to avoid a miscarriage of justice.

In considering whether the facts of a given case compel the need for separate trial depositions, the first analytical step is to consider "the purpose for which the [trial] deposition is being taken." *Estenfelder v. Gates Corp.*, 199 F.R.D. 351, 355 (D. Colo. 2001). In *Charles v. F.W. Wade,* 665 F.2d 661, 664 (5th Cir. 1982), *cert. denied*, 460 U.S. 1036 (1983), the Fifth Circuit reversed the trial court's denial of a motion to take a trial deposition. The appellate court explained that, in a practical sense, discovery depositions and trial depositions were sometimes taken for different purposes—even though the Federal Rules made no such distinction. The court reasoned that

> [a]lthough the discovery period had indeed closed at the time appellant made his motion, the requested deposition would not have been taken for purposes of discovery but as the testimony of a witness unavailable for trial. Appellant's motion underscored this distinction by informing the court that the deposition would "not be taken for discovery purposes, but in lieu of [the deponent's] live testimony at trial." The distinction is a valid one. Appellant was not seeking to discover the deponent's testimony—appellant knew what [the deponent] had to say—but was seeking a means for introducing [the deponent's] testimony at trial.

*Id.*

In applying the reasoning in *Charles* to the facts in the case at bar, the Court must determine whether there is a separate purpose for taking trial depositions of BSC's corporate witnesses. We know that discovery in the MDL was not targeted to Ms. Cline's specific facts and claims; instead, the plaintiffs' committee deposed BSC's witnesses to ascertain facts that would broadly apply to tens of thousands of individual cases. We also know that the various mesh products at issue in the MDL share features in common, so BSC's corporate witnesses were often asked to testify about more than one product line.

Even though the plaintiffs' committee was aware that these witnesses would likely be outside the subpoena power of the many trial courts, it does not follow that the purpose for taking all of these depositions in the MDL was to present that testimony in a logical, coherent format in a given plaintiff's trial.  Ms. Cline retains the right to present her claims to the jury as she sees fit, regardless of what happened in the MDL, so long as her desired mode of presentation does not cause undue burden or prejudice to BSC.

Rule 16(c)(2) generally permits the Court to issue pretrial orders to manage the presentation of evidence, particularly when an action involves complex issues.  As the Eighth Circuit explained long ago:

> Since the law places the responsibility for the trial of cases in the hands of the trial judge, a large degree of discretion is essential in the conduct of that trial within a broadly defined framework. Among other things, the trial court ha[s] discretion on the admission of evidence, the extent of examination and cross-examination of witnesses, the conduct of trial counsel, the trial court's comments upon the evidence, and the order and proper presentation of the evidence.

*Skogen v. Dow Chem. Co.,* 375 F.2d 692, 704 (8th Cir. 1967) (internal citations omitted). Certainly, the Court owes the jury a duty to not waste its time or cause unnecessary confusion.  In considering the unique circumstances presented in this case, the Court believes requiring Ms. Cline's counsel to splice and dice years of testimony into a Frankenstein's monster of a trial deposition will not serve the jury's understanding of the evidence.  Good cause justifies ordering the parties to take one videotaped trial deposition for each of the three witnesses identified by Ms. Cline.  Doing so will best serve the factfinder, while failing to do so will jeopardize not only the factfinder's ability to comprehend the evidence, but also Ms. Cline's ability to present her case to the jury.  To the extent BSC labels this relief "abusive" or "border[ing] on harassment," (Doc. 93, p.

18), the Court will offer BSC a couple of options to consider in complying with the Court's Order.

**IT IS THEREFORE ORDERED** that the Motion to Permit Live Trial Testimony in Contemporaneous Transmission (Doc. 92) is **GRANTED IN PART AND DENIED IN PART**.  Any of the options listed below will satisfy the Court's Order and provide adequate relief to Ms. Cline; BSC may choose its option.

> **OPTION ONE:**  BSC may agree to present Mr. Goddard's, Ms. Connor's, and Ms. Rao's testimony live at trial, in which case, these witnesses would be deemed available to testify for *all purposes*, and the Court would require them to be available to be called in Ms. Cline's case-in-chief if she so chose.

*If BSC declines Option One, it may consider Option Two.*

> **OPTION TWO:**  BSC may agree to produce these witnesses live from a remote location, and their testimony would be presented to the jury during trial by videoconference.

*If BSC declines Option Two, then the Court **ORDERS** compliance with Option Three:*

> **OPTION THREE:**  The parties shall preserve the trial testimony of each of the three witnesses by taking new, videotaped trial depositions—not for discovery purposes, but in lieu of live testimony at trial.  In each such deposition, counsel will examine the deponent as if that person were available as a witness and then testifying live in front of the jury.  All party objections made pursuant to Federal Rule of Civil Procedure 32 or the Federal Rules of Evidence must be stated on the record during the deposition.  If any party wishes to impeach the deponent or refresh the deponent's recollection using prior deposition testimony taken during

7

the MDL, this must be done *on the record during the trial deposition*. In other words, outside the confines of these trial depositions, neither party will be permitted to play snippets of the witnesses' prior MDL testimony for the jury.

**BSC shall notify Plaintiff as to the option it selects by no later than May 3, 2021**. If BSC selects Option Three, then all such trial depositions shall be completed by no later than June 4, 2021.

**IT IS SO ORDERED** on this 26th day of April, 2021.

_____
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE